UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLANIA

| | |
|---|---|
| DALE McCLENDON : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> SCHOOL DISTRICT OF PHILADELPHIA, : <br> : <br> Defendant. : | C.A. NO: 2:23-cv-00138-GAM |

### THIRD AMENDED COMPLAINT - CIVIL ACTION

Plaintiff, Dale McClendon, files the within Third Amended Complaint (the first such amendment following removal of the matter to the United States District Court) for claims of pursuant to 42 U.S.C. §1983 for violations of his rights guaranteed under the First, Fifth and Fourteenth Amendments; for Breach of Contract; Equitable Estoppel; Judicial Estoppel; and for Declaratory Judgment, and avers as follows:

### PARTIES, JURISDICTION, VENUE

1. Plaintiff is an individual residing in the city of Philadelphia.

2. Defendant, School District of Philadelphia ("SDP"), is a municipal entity operating in the City of Philadelphia.

3. This matter was commenced in the Court of Common Pleas of Philadelphia, August Term 2022 No: 03116, which had subject matter and personal jurisdiction.

4. In his Second Amended Complaint, Plaintiff added claims under 42 U.S.C. §1983 and Defendant timely removed the case to this Court.

5. This Court has subject matter jurisdiction over the §1983 claims and supplemental jurisdiction over the state law claims.

6. Venue is appropriate in this Court because Defendant is in Philadelphia, Pennsylvania; and all relevant actions occurred in Philadelphia, Pennsylvania.

# FACTS

**A.    Facts Giving Rise to the *Fitzpatrick* Matter and the Settlement.**

7.    This action arises out of a settlement of a previous lawsuit filed in the Court of Common Pleas of Philadelphia, *McClendon v. Fitzpatrick*, Phila. C.C.P. No: 141102095 (the "*Fitzpatrick* Matter"). A true and correct copy of the settlement agreement that terminated the *Fitzpatrick* matter is attached hereto as *Exhibit A* (the "Agreement"). The Agreement was signed by Plaintiff on March 1, 2016; SDP on March 29, 2016; and by Linda Fitzpatrick on March 22, 2016.

8.    Plaintiff has suffered serious harm by Defendant's breach of ¶9, Non-Disparagement, which provides as follows:

> 9.    <u>Non-Disparagement</u>. The parties to this grievance and this lawsuit all agree that they will not disparage one another, orally or in writing, including but not limited to social media posts. The parties acknowledge that the charges brought against Claimant have been expunged, other than to say, in response to an inquiry, that such charges were expunged. The parties will make no comment about the above-captioned grievance or lawsuit other than to say it has been resolved confidentially.

9.    As set forth in the Complaint in the *Fitzpatrick* matter (attached hereto as *Exhibit B* and incorporated herein by reference), Defendant and Fitzpatrick falsely accused Plaintiff of inappropriate contact with a minor. Fitzpatrick's false testimony was heard and resoundingly rejected in the matter of *Comm. v. McClendon*, MC-51-CR-0047473-2013 (James Murray Lynn, J.) *See Exhibit C*, February 12, 2014 transcript.

10.    Judge Lynn presided over the bench trial and held that the charges against Mr. McClendon were utterly frivolous (*Exhibit C*, pp. 94-95):

```
                                                    Page 94
        14        THE COURT: Thank you. I'm going to
        15   rule now, and you ask about what message does
        16   this send.  Normally I don't do this, but I am
        17   going to do it now.
        18   So, for that witness to tell this
        19   court, to imply they were underneath this
```

```
20   blanket together, is misleading this court, and
21   I find her to be completely not credible.
22        I know also that she didn't see the
23   slap, and I wonder if the slap occurred.  I
24   have reasonable doubt whether a slap even
25   happened.
                                          Page 95
…
2         I would also point to the testimony
3    of all these other witnesses that have a
4    completely different point of view as to what
5    occurred on the day after when they had this
6    confrontation outside, meaning in the true
7    sense that when they had a confrontation, they
8    met one another.  Ms. Fitzpatrick's version of
9    it is a completely different version that the
10   version that the other witnesses told me, that
11   she was unfriendly, and was unfriendly in the
12   past with respect to the other people about how
13   she didn't want to take care of this child
14   herself, and she treated the defendant with
15   professional disrespect.  Although she didn't
16   testify   herself   that    she   did    that,   she
17   testified quite the opposite.
18        I will not take the liberty away
19   from a human being who is in front of me based
20   on that kind of evidence.
21        I find the defendant not guilty of
22   all charges.
```

11. The maliciously false statements led Plaintiff to file the *Fitzpatrick* matter, alleging claims of, *inter alia*, defamation and malicious prosecution. (All of the factual allegations and legal theories pled in the *Fitzpatrick* matter are incorporated herein by reference.)

12. Defendant agreed to settle those claims.

13. Nevertheless, it is believed, and therefore averred, that Defendant has repeatedly violated its agreement and reported the unfounded allegations over the past six-plus years. Plaintiff did not discover this until February 2022 (*see infra*).

14. The repeated publication of such knowingly false information was part of a pattern and practice of a breach of Plaintiff's Constitutionally and statutorily protected rights.

15.     The conduct of Defendant has destroyed Plaintiff's career and caused him great emotional distress, humiliation, economic loss, and other damages as set forth herein.

**B.     Plaintiff Discovered the Breach of the Agreement on February 14, 2022.**

16.     Following the outrageous accusations, the resolution of his worker's compensation claim, and the Agreement, and many difficulties finding work (for reasons unknown to Plaintiff) (*see infra*), Plaintiff was hired by Mastery Charter School.

17.     On February 14, 2022, while working as a substitute teacher in a fifth grade English class, Monique Dolcy, the principal of Mastery, walked into the classroom and stopped the class. Dolcy instructed Plaintiff to stop what he was doing and immediately report to the principal's office for a conference with HR. Plaintiff did so.

18.     Teddie Gwynn, Director of HR at Mastery Charter, told Plaintiff that Defendant informed Mastery that Plaintiff was terminated from SDP because of child abuse and/or sexual misconduct with a child. The next day, on February 15, 2022, Mastery Charter School formally notified Plaintiff of his termination. *Exhibit D*.

19.     After commencement of this action, Plaintiff obtained the false statement made by Defendant to Mastery. SDP knowingly provided false information in violation of 24 P.S. §1-111.1 ("Act 168"). A true and correct copy of the false "Act 168 Form" is attached hereto as *Exhibit E*.

20.     On January 5, 2022, Defendant, through its agent K. Brisbon, completed the Act 168 Form and falsely stated, in violation of Act 168 and the Agreement. *See Exhibit E*, p.9:

To the best of your knowledge, has Applicant ever:

Yes ●   No ○   Been the subject of an abuse or sexual misconduct investigation by any employer, state licensing agency, law enforcement agency or child protective services agency (unless the investigation resulted in a finding that the allegations were false)?

Yes ●   No ○   Been disciplined, discharged, non-renewed, asked to resign from employment, resigned from or otherwise separated from employment while allegations of abuse or sexual misconduct were pending or under investigation or due to adjudication or findings of abuse or sexual misconduct?

21. These statements were knowingly false in the following respects:

   a) The "yes" box was checked despite the fact that "the investigation resulted in a finding that the allegations were false." The Agreement explicitly said that the charges were expunged. This is the equivalent of a finding that the allegations were unfounded. In the alternative, this is implicitly what the Agreement required.

   b) Reporting of this information after the Agreement was signed is knowingly false. No reasonable reading of the Agreement can be squared with this report.

   c) Plaintiff was not terminated during the pendency of any investigation. In fact, the Agreement, p.1, explicitly provides as follows:

> **NOW, THEREFORE,** in full and complete settlement of the above matter, the Grievant, Union and School District agree as follows:
>
> 1. The District shall reinstate Grievant, with no back pay or any other make-whole remedies, effective September 1, 2016. The Grievant shall not be placed at the school in which he worked immediately preceding his termination. Should the Grievant fail to report to work at his assigned school at the beginning of the 2016-2017 school year, the District owes no further obligation to offer employment to the grievant in the future. However, this Agreement does not preclude Grievant from seeking employment with the District in the future.

   d) The Agreement was *after* the investigation and shows there was no discipline, discharge, non-renewal or request to resign during the pendency of any investigation.

   e) It is impossible for Defendant to have agreed to reinstate Plaintiff, as it expressly did in the Agreement, if he was terminated as a result of a founded "adjudication or finding[]" of sexual misconduct. *See* Act 168 Form.

   f) The true reason for Plaintiff's separation from employment, contrary to the maliciously false statements of Defendants, was as part of a settlement of Plaintiff's workers compensation claim. Plaintiff suffered a work-related injury

5

    and he resigned his employment when his worker's compensation case had settled. *Exhibit F*, Workers Compensation Settlement.

   g) Defendant is equitably estopped and/or judicially estopped from asserting that it was not bound by the plain language of the Agreement to cease reporting the unfounded child abuse allegation. No reasonable reading of the Agreement could allow Defendant to continue to report the unfounded allegations and other false information in the Act 168 Form.

22.  This event caused Plaintiff to suffer extreme humiliation and great emotional distress. He suffered suicidal thoughts and sought medical care. He is being treated for anxiety. (*See infra*).

23.  Defendant maliciously and falsely stated that Plaintiff was terminated because of allegations of child abuse against him.

24.  Mastery terminated Plaintiff because of information it received from Defendant.

25.  Plaintiff dismissed his defamation and malicious prosecution claims against Defendant and Fitzpatrick in justifiable reliance upon Defendant's promises in the Agreement.

**C.**  **Defendant's Policy and Procedure Violated Plaintiff's Constitutional Rights.**

26.  Upon discovery of Defendant's February 14, 2022 publication, Plaintiff demanded that Defendant retract the false statements and agree never to publish such information in the future.

27.  Defendant refused.

28.  Defendant's stated reason for its refusal is contained in its Preliminary Objections to the original Complaint and Amended Complaint. In both pleadings, Defendant asserts that it "had an obligation to …disclose he was investigated or disciplined for abuse…" *See* November 29, 2022 Preliminary Objections, ¶13.

29.  Defendant asserts it is immune from suit based on 24 P.S. §1-111.1(d)(5). However, such immunity does not apply where such information is "knowingly false."

6

30. The information published by Defendant was knowingly false.

31. Defendant knew that the Court found the allegation that Plaintiff was under a blanket with a student was knowingly and willfully false.

32. Defendant knew that it entered into *Exhibit A*.

33. Defendant published the information anyway.

34. Furthermore, the reason why Defendant stated Plaintiff was terminated was knowingly false. Plaintiff was not terminated because of child abuse or sexual misconduct. Plaintiff's separation of employment from Defendant was by agreement when he settled his workers compensation claim against Defendant. The statements Defendant were knowingly false and malicious.

35. Defendant asserts the non-disparagement clause of *Exhibit A* is unlawful and unenforceable based on 24 P.S. §1-111.1(f). However, following the statements of the Court in *Exhibit C*, the parties expressly agreed the allegations of suspected abuse were entirely unfounded. Construing the terms of *Exhibit A* reasonably, the purpose of the agreement was that there was no "suspected" abuse and therefore the agreement does not "suppress" anything that must be disclosed pursuant to Act 168. *See* 24 P.S. §1-111.1(f)(3), which provides, in pertinent part (*emphasis supplied*):

> (f) …a school entity … may not enter into … an agreement for resignation or termination, a severance agreement or any other contract or agreement or take any action that:
> …
> (3) requires the school entity or independent contractor to expunge information about allegations or findings of suspected abuse or sexual misconduct from any documents maintained by the school entity or independent contractor, **unless after investigation the allegations are found to be false.**

36. The allegations were found to be false after investigation.

37. The effect of the agreement was that the allegations were found to be false after investigation. This finding was supported by substantial evidence, as set forth in *Exhibit C*.

38. The holding of the Court was after full investigation and trial and the allegations were found to be false.

39. The plain language of the Agreement is in full compliance with Act 168.

40. To the extent there is any ambiguity, the intent of the parties when entering the Agreement was to comply with Act 168.

41. Defendant is estopped from asserting the allegations were not found to be false. It obtained dismissal of a lawsuit pending in this Court based on its promises in *Exhibit A*.

42. Defendant cannot lawfully enter into an agreement in compliance with 24 P.S. §1-111.1(f), obtain judicial relief from this Court (in the form of dismissal of the *Fitzpatrick* matter), and assert that the agreement is of no force and effect.

43. The publication of false, unfounded, discredited claims of abuse is a violation of Plaintiff's First, Fifth and Fourteenth Amendment rights.

44. In its November 29, 2022 Preliminary Objections, ¶37 Defendant states that it continued to publish the information because it "had an obligation to…disclose that he was investigated or disciplined for abuse."

45. Defendant's admission in the Preliminary Objections are an admission that Defendant's publication of this false information, after agreement that it was unfounded and should be expunged, is a matter of rule, regulation, policy, official decision, widespread custom and/or well-settled practice that constitutes a standard operating procedure of Defendant.

46. In addition, or in the alternative, Defendant's publication of this false information, after agreement that it was unfounded and should be expunged, demonstrates inadequate training, inadequate supervision, and/or failure to adopt a needed policy.

**D.      Plaintiff Has Suffered Great Harm as a Result of Defendants' Misconduct.**

47.     The information produced by Mastery in response to Plaintiff's subpoena demonstrates the only reason for Plaintiff's termination was the false information reported by Defendant in contravention of the Agreement, Act 168 and Plaintiff's Constitutional Rights.

48.     After discovery of Defendant's publication in February 2022, Plaintiff now believes that Defendant published this information to many other employment applications he submitted.

49.     One employer whom Plaintiff knew before he worked for Defendant, Emmanuel Rothwell at Spectrum Staffing, employed Plaintiff immediately after the worker's compensation settled.  Plaintiff was staffed on a *per diem* basis (at $120/day) at several different schools from 2017 (after Plaintiff settled the workers' compensation case).

50.     However, Plaintiff needed a full-time job and benefits to support himself and his family.  Therefore, shortly after the workers' compensation claim was settled, Plaintiff applied to many employers.  Some employers interviewed Plaintiff and appeared interested in hiring him, but then those employers did not follow up.  Plaintiff believes, and therefore avers, that his inability to obtain such employment was a direct and proximate result of Defendant's misconduct.

51.     The decision to publish this information was made by SDP immediately after signing the Agreement.  Plaintiff did not discover this decision until February 2022 because of the willful misrepresentations and concealment of SDP.  Accordingly, Plaintiff respectfully submits ***every*** publication of the Act 168 information is actionable, from March 2016 through the present.

52.     At the beginning of the Fall 2021 semester, Plaintiff was assigned by Spectrum to Mastery.  Mastery observed Plaintiff's excellent work and offered him a full-time position at Mastery.  Plaintiff accepted that in or about November 2021.

53.     Plaintiff was making $57,000 per year at Mastery, with benefits.

54. Thereafter, on or about February 14, 2021, Defendant published the information to Mastery and Plaintiff was pulled out of school and fired in a humiliating and demeaning fashion. This caused Plaintiff great humiliation and distress.

55. Since the workers compensation settled, Plaintiff has worked as a contractor with Caregivers of America for $400 per week, with no benefits, helping an adult with severe autism.

56. The work for Caregivers of America, without the *per diem* work with Spectrum, yielded insufficient income for Plaintiff to support himself and his family; Plaintiff also took a job at Sprouts supermarket for $16.25 per hour. (He recently was given a raise to $16.75 based on his performance.)

57. Plaintiff is now working six days per week and must now perform physical labor. He works in the meat and fish department and returns home every day with his clothing covered in blood and guts. The work is difficult, physically painful (especially with the injuries he suffered while working for Defendant), unfulfilling, demeaning and humiliating.

58. Plaintiff was excellent at his work in education. It was fulfilling and purposeful. Being cast out of this work was crushing. It is very difficult for Plaintiff, every day, to be unable to help children and instead have to perform manual labor. Plaintiff suffers from sleeplessness and anxiety.

59. Shortly after he was fired by Mastery, Plaintiff sought treatment for anxiety, sleeplessness and suicidal thoughts. Treatment continues through this day.

60. As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe injuries, which include but are not limited to:

   a) Severe emotional distress, including but not limited to sleeplessness and anxiety;
   b) Personal embarrassment, humiliation and damage to reputation;
   c) Psychological injury, including but not limited to anxiety, suicidal ideation;
   d) Lost wages, diminished earning capacity, lost benefits,
   e) Future wage losses;
   f) Out-of-pocket losses;
   g) Reasonable attorney's fees and costs awardable under the applicable laws; and
   h) Such other damages as described in further detail in this pleading and as will become evident through the course of discovery.

## COUNT I – Constitutional Violations (42 U.S.C. §1983)

61. Plaintiff incorporates paragraphs 1-60 as if set forth at length herein.

62. 42 U.S.C. §1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privilege or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress…

63. SDP is a municipal entity and its actions were taken under color of law.

64. The reporting of abuse by Defendant, after investigation found it to be unfounded and after Defendant agreed to no longer disparage Plaintiff, was in violation of Plaintiff's rights secured by the First, Fifth and Fourteenth Amendments of the United States Constitution.

65. Plaintiff filed the *Fitzpatrick* suit consistent with his First Amendment right to petition the government for the redress of grievances and his right to free speech. The reporting of abuse, after expressly agreeing not to disparage and to expunge this information, was retaliatory and contrary to his First Amendment Rights.

66. It is clear, based on Defendant's position taken in this matter in the Court of Common Pleas and in this Court, that Defendant never intended to comply with the Agreement. SDP falslely states that it could not cease reporting the false information even after it entered the Agreement. This is evidence that Defendant's actions were taken in retaliation for filing the *Fitzpatrick* matter and the union grievance – Defendant obtained dismissal of both actions, without paying anything, and with the full intent of continuing to report the information.

67. Defendant's false reporting of allegations it knew were unfounded and contrary to its express agreements, is in violation of Plaintiff's Fifth and Fourteenth Amendment rights to be free from the deprivation of liberty and property without due process of law.

68. Act 168 provides that Defendant must not report information it finds to be false. By its own admission, however, Defendant asserts it is bound to report knowingly false information, even when it agrees not to do so. This evinces a failure to abide by Plaintiff's Constitutional rights by Defendant's own rules, regulations, policies, official decisions, widespread customs and/or well-settled practice that constitutes a standard operating procedure of Defendant.

69. Act 168 creates a property right to be free from reports of unfounded allegations of abuse. The Act specifically states: "unless after investigation the allegations are found to be false." 24 P.S. §1-111.1(f)(3).

70. There is a liberty interest in being free from unfounded Act 168 reports of abuse. The Act specifically states: "unless after investigation the allegations are found to be false." 24 P.S. §1-111.1(f)(3). It is an alteration of legal status – Plaintiff's eligibility for employment in direct contract with children is impinged by the finding of abuse.

71. Contrary to these rights, Defendant reported this information without any indication of how its investigation found the allegations to be founded; without giving Plaintiff notice or an opportunity to be heard, as any reasonable investigation in this context must; despite the findings of the judge in the criminal case; and despite Defendant's express representations in the Agreement.

72. As a direct and proximate result of Defendant's violations of Plaintiff's Constitutional rights, Plaintiff has suffered severe injuries, as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff, Dale McClendon, demands judgment in him favor against Defendant, plus such other relief as this Court deems just and proper.

## COUNT II – Breach of Contract

73. Plaintiff incorporates paragraphs 1-72 as if set forth at length herein.

74. *Exhibit A* constitutes a valid and enforceable contract between Plaintiff and Defendant.

75. Plaintiff and Defendant mutually assented to *Exhibit A*.

76. Defendant's publication of disparaging information to Mastery Charter and other unknown entities within the previous six (6) years is a breach of the contract.

77. Plaintiff had no notice or knowledge that anything was disclosed in violation of the Agreement until on or about February 14, 2022.

78. The entirely unfounded and discredited report of suspected abuse is "disparagement" in violation of the agreement.

79. The reporting of information that was agreed to be "expunged" is in violation of the Agreement.

80. As a direct and proximate result of Defendant's breach of contract, Plaintiff suffered injury.

WHEREFORE, Plaintiff, Dale McClendon, demands judgment in him favor against Defendant, plus such other relief as this Court deems just and proper.

### COUNT III – Equitable Estoppel

81. Plaintiff incorporates paragraphs 1-80 as if set forth at length herein.

82. Defendant is equitably estopped from publishing the information in the Act 168 Form.

83. Defendant misrepresented a material term of the Agreement because Defendant did not intend to cease reporting the unfounded allegation of abuse; and the Agreement unequivocally requires that Defendant not publish the unfounded allegation.

84. Defendant also materially misrepresented the reasons why Plaintiff was terminated, in violation of the Agreement that stated he was reinstated.

85. Plaintiff reasonably relied upon this misrepresentation when he signed the Agreement and dismissed the *Fitzpatrick* Matter.

86. Plaintiff's reliance upon such misrepresentation was to his detriment, as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff, Dale McClendon, demands judgment in him favor against Defendant, plus such other relief as this Court deems just and proper.

### COUNT IV – Judicial Estoppel

87. Plaintiff incorporates paragraphs 1-86 as if set forth at length herein.

88. Defendant is judicially estopped from publishing the information in the Act 168 Form.

89. Defendant's conduct in agreeing to cease reporting the unfounded allegation and reporting it anyway is "playing fast and loose with the courts."

90. Defendant gained advantage in litigation of the *Fitzpatrick* matter and the union grievance by having those actions dismissed on the theory that 1) it could and would stop reporting disparaging information and expunge the charges; and 2) that Plaintiff was reinstated to his position and not terminated in connection with the allegations of misconduct.

91. There is no good explanation for Defendant's material change in position in the *Fitzpatrick* matter and in the instant matter.

92. Defendant's inconsistent positions were deliberately asserted. This has been made clear by Defendant's filings in this action in the Court of Common Pleas and in this Court – it intended to continue to report the unfounded allegations despite its representations in the Agreement.

93. Plaintiff suffered injury as a result of Defendant's "fast and loose" misrepresentations, as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff, Dale McClendon, demands judgment in him favor against Defendant, plus such other relief as this Court deems just and proper.

## COUNT V – Declaratory Judgment

94. Plaintiff incorporates paragraphs 1-93 as if set forth at length herein.

95. In addition to all equitable relief available to Plaintiff pursuant to §1983, Plaintiff also seeks declaratory judgment respecting the terms of the contract.

96. Plaintiff respectfully requests this Court declare as follows respecting the Agreement (*Exhibit A*):

    a) The Agreement is valid and enforceable;
    b) The Agreement was in compliance with Act 168;
    c) The allegations of suspected abuse were, after investigation, found to be false;
    d) Defendant's publication to Mastery and/or other prospective employers is in breach of the Agreement;
    e) Defendant shall not publish further information in violation of the Agreement;
    f) In response to any inquiry about Plaintiff's employment history with Defendant, Defendant shall publish only the date of hire and termination and the termination was a voluntary resignation;
    g) If a request is specifically made about the *Comm. v. McClendon* matter, Defendant shall state only that the allegations have been expunged from Defendant's records; and
    h) Such other relief as this Court deems just and proper.

WHEREFORE, Plaintiff, Dale McClendon, demands judgment in him favor against Defendant, plus such other relief as this Court deems just and proper.

Respectfully submitted,

CREECH & CREECH LLC

_____
TIMOTHY P. CREECH
CREECH & CREECH LLC
1835 Market St., Suite 2710
Philadelphia, PA 19103
(215) 575-7618; Fax: (215) 575-7688
timothy@attorneycreech.com

*Counsel for Plaintiff,*
*Dale McClendon*

DATED:    March 14, 2023

15

**CERTIFICATE OF SERVICE**

  I certify a true and correct copy of the foregoing will be sent by e-notification to the following through this Court's electronic filing system:

Ronak Chokshi, Esq.
Senior General Counsel
The School District of Philadelphia
440 North Broad Street, Suite 313
Philadelphia, Pennsylvania 19130
Office: 215.400.5391
Email: rchokshi@philasd.org

              _____
              TIMOTHY P. CREECH

              *Counsel for Plaintiff,*
              *Dale McClendon*

DATED:  March 14, 2023