**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DALE MCCLENDON,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 23-138** |
| | : | |
| **THE SCHOOL DISTRICT OF PHILADELPHIA,** | : | |
| | : | |
| **Defendant.** | : | |

**McHUGH, J.**                                                                                                           **June 28, 2023**

### MEMORANDUM

This case deals with the aftermath of allegations of child abuse that were leveled at the Plaintiff nearly ten years ago while he was employed by the School District of Philadelphia as a special education teacher. After subsequent state criminal charges against the Plaintiff were dismissed because the judge found the complaining witness – a fellow teacher – to be wholly uncredible, Plaintiff brought a state court defamation action against the complaining teacher and the District, which ultimately settled. Plaintiff was offered reinstatement but declined.

In this action, Plaintiff alleges that since the previous settlement, the District has continued to disclose information about its abuse investigation to other schools where Plaintiff has sought employment, in violation of the parties' agreement. He asserts claims for breach of contract, "estoppel," violations of due process, and retaliation for the exercise of First Amendment rights, which the District has moved to dismiss. I will grant the Motion in part and dismiss the claims for estoppel and First Amendment retaliation; the contract and due process claims may proceed.

I.     **Relevant Background**

The facts pleaded are as follows.  Plaintiff Dale McClendon was previously employed as a special education assistant teacher by the Defendant, the School District of Philadelphia. *McClendon v. Fitzpatrick* Complaint, Third Am. Compl. Ex. B at ¶ 4, ECF 5-2 ("Ex. B").[1]  In the fall of 2013, McClendon was assigned to care for a specific special needs student at his school, who was part of the class taught by Linda Fitzpatrick.  *Id.* ¶¶ 6-12.  Fitzpatrick previously taught this student during the 2012-2013 school year, during which the student broke two of Fitzpatrick's fingers.  *Id.*  Because of the student's behavioral issues and Fitzpatrick's frustration with teaching the student for two years in a row, Fitzpatrick frequently asked McClendon to take the student out of her classroom to work with the student one-on-one.  *Id.* ¶¶ 12-20.  After McClendon was injured by this student during the fall of 2013, however, McClendon told Fitzpatrick that the student would need to spend more time in Fitzpatrick's classroom.  *Id.* ¶¶ 28-34.  Fitzpatrick is alleged to have reacted angrily to McClendon's telling her that the student would need to be in her classroom more frequently, and her outburst during this conversation was overheard by three other teachers.  *Id*.

Shortly after this conversation, Fitzpatrick notified the District that she witnessed McClendon inappropriately laying on the floor with the student and physically striking the student. *Id.* ¶¶ 35-39.  According to McClendon, these allegations were entirely false and were created so that Fitzpatrick could avoid interacting with the special needs student and so that the student would be removed from her school.  *Id.* ¶¶ 48-63.  After Fitzpatrick reported these allegations,

---

[1] McClendon failed to re-attach the exhibits attached to his Third Amended Complaint after his first attempt to file that complaint was stricken from the record for failure to comply with the proper procedure for amending the complaint.  But because the District is on notice as to the proper documents – and because the documents appear "integral to the complaint," *Buck v. Hampton Twp. Sch. Dist*., 452 F.3d 256, 260 (3d Cir. 2006) – I will consider these documents in ruling on Defendant's Motion.

2

McClendon was arrested and charged with simple assault, harassment, and endangerment of the welfare of a child. *Id.* ¶ 41; Third Am. Compl. ¶ 9, ECF 8; *see also Commonwealth v. McClendon*, MC-51-CR-0047473-2013.

At the preliminary hearing in the criminal case against McClendon, Fitzpatrick testified regarding the alleged abuse that she witnessed. But at the conclusion of the hearing, the presiding judge repudiated Fitzpatrick's allegations and credibility, stating:

> Thank you. I'm going to rule now, and you ask about what message does this send. Normally I don't do this, but I am going to do it now. So, for that witness to tell this court, to imply they were underneath this blanket together, is misleading this court, and I find her to be completely not credible.
>
> I know also that she didn't see the slap, and I wonder if the slap occurred. I have reasonable doubt whether a slap even happened.
>
> I would also point to the testimony of all these other witnesses that have a completely different point of view as to what occurred on the day after when they had this confrontation outside, meaning in the true sense that when they had a confrontation, they met one another. Ms. Fitzpatrick's version of it is a completely different version that the version that the other witnesses told me, that she was unfriendly, and was unfriendly in the past with respect to the other people about how she didn't want to take care of this child herself, and she treated the defendant with professional disrespect. Although she didn't testify herself that she did that, she testified quite the opposite.
>
> I will not take the liberty away from a human being who is in front of me based on that kind of evidence.

Third Am. Compl. ¶ 10; Third Am. Compl. Ex. C at 94-95, ECF 5-3. As a result of her findings, the judge found McClendon not guilty and dismissed the charges against him. *Id.*

After the conclusion of the criminal action and the dismissal of all charges, McClendon filed a defamation action against Fitzpatrick and the District for advancing false allegations of abuse against him. Third Am. Compl. ¶ 11; *see also* Ex. B. The parties ultimately agreed to settle McClendon's civil action, along with a related grievance filed by his union on his behalf. Third

3

Am. Compl. ¶ 12; Third Am. Compl. Ex. A ("Ex. A"), ECF 5-1. Among the terms of the settlement, the District agreed to reinstate McClendon or – should he fail to return to work – provide McClendon with a neutral employment reference. Ex. A ¶¶ 1-2. The parties also jointly agreed to the following non-disparagement clause:

> Non-Disparagement: The parties to this grievance and this lawsuit all agree that they will not disparage one another, orally or in writing, including but not limited to social media posts. The parties acknowledge that the charges brought against Claimant have been expunged, other than to say, in response to an inquiry, that such charges were expunged. The parties will make no comment about the above-captioned grievance or lawsuit other than to say it has been resolved confidentially.

*Id.* ¶ 9.

McClendon ultimately resigned from his employment with the District after he settled a worker's compensation matter arising from his work-related injury. Third Am. Compl. ¶ 21. Since separating from the District, McClendon has struggled to find employment opportunities, repeatedly interviewing for positions but never hearing back from potential employers. *Id.* ¶¶ 47-50.

McClendon then secured a position with Mastery Charter School at the end of 2021. *Id.* ¶ 16. As part of the application process for this position, and pursuant to a state statute aimed at protection of children, commonly referred to as Act 168, Mastery required McClendon and each of McClendon's former employers – including the District – to submit a completed "Commonwealth of Pennsylvania Sexual Misconduct/Abuse Disclosure Release" ("Act 168 Form"). *See id.* ¶ 20; Third Am. Compl. Ex. E ("Ex. E"), ECF 5-5; 24 P.S. § 1-111.1. The Act 168 Form requires the applicant and the former employer School District to each complete a section of the form, including answering a question that asks each to check "Yes" or "No" in response to the following questions:

> Have you (Applicant) ever / To the best of your knowledge, has Applicant ever:
>
> > Been the subject of an abuse or sexual misconduct investigation by an employer, state licensing agency, law enforcement agency or child protective services agency (*unless the investigation resulted in a finding that the allegations were false*)?
> >
> > Been disciplined, discharged, non-renewed, asked to resign from employment, resigned from or otherwise separated from employment while allegations of abuse or sexual misconduct were pending or under investigation or due to adjudication or findings of abuse or sexual misconduct?
> >
> > Had a license, professional license or certificate suspended, surrendered or revoked while allegations of abuse or sexual misconduct were pending or under investigation or due to an adjudication or findings of abuse or sexual misconduct?

Third Am. Compl. ¶ 20; Ex. E at 9 (emphasis added). On McClendon's portion of the form sent to the District, he marked "No" to each of these questions. When "K. Brisbon" at the District filled out the form several weeks later, however, Brisbon marked "Yes" to the first two questions. Third Am. Compl. ¶ 20; Ex. E at 9.

While the complaint is unclear on timing, it appears that McClendon was permitted to start teaching at Mastery while the school awaited the District's response to the Act 168 inquiry. *See* Third Am. Compl. ¶¶ 16-17. But in February 2022, while working as a substitute teacher in a fifth grade English class, the principal of Mastery walked into McClendon's classroom and stopped the class, ordering Plaintiff to stop teaching immediately and report to the principal's office for a meeting with human resources. *Id*. ¶ 17. McClendon complied, and at the meeting, the director of human resources told McClendon that the District had notified Mastery that McClendon was previously terminated due to child abuse and/or sexual misconduct with a child. *Id*. ¶ 18. McClendon was terminated the next day. *Id.* According to the termination letter, Mastery terminated McClendon because McClendon did not accurately report information about the 2013

abuse allegation leveled against him while he was employed by the District. Third Am. Compl. Ex. D ("Ex. D."), ECF 5-4.[2]

After discovering the reason for his termination, McClendon contacted the District and demanded that they retract their statements and stop publishing this information in future forms, as the District's statements were clearly false and violated the terms of the settlement agreement entered into in McClendon's defamation suit. Third Am. Compl. ¶¶ 26-36. The District refused, claiming that it was obligated to report this information under Act 168. *See id.*; 24 P.S. § 1-111.1. Based on this statement, McClendon's termination from Mastery, and his difficulty finding employment, McClendon alleges that the District has repeatedly disclosed this information on Act 168 forms in the years since the parties entered into their settlement agreement. Third Am. Compl. ¶¶ 13, 50. He further alleges that these facts demonstrate a policy or practice of the District publishing information about teachers who were accused of abuse, even after such allegations are proven to be unfounded and expunged. *Id.* ¶¶ 44-46.

McClendon now brings claims that the District: (1) retaliated against him for filing a lawsuit in violation of the First Amendment; (2) maliciously and falsely harmed his reputation in violation of the Fifth and Fourteenth Amendment; and (3) breached the terms of the parties' settlement agreement from his defamation suit. *Id.* ¶¶ 61-80. He further seeks relief in the form of equitable estoppel, judicial estoppel, and declaratory judgment. *Id.* ¶¶ 81-96. The District has moved to dismiss for failure to state claim.

---

[2] Under Act 168, an applicant who provides false information or fails to disclose information on an Act 168 Form may be subject to "termination or denial of employment" and "may be subject to criminal prosecution," along with "civil penalties and professional discipline." 24 P.S. § 1-111.1(c).

## II.  Standard of Review

In this Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III.  Discussion

### A. First Amendment retaliation

McClendon's first constitutional claim set forth in Count I alleges that the District submitted false Act 168 forms in retaliation for his civil suit, in violation of his First Amendment rights.[3]

To plead a First Amendment retaliation claim, "a plaintiff must allege (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (citation omitted).[4]

The District challenges McClendon's claim solely on the third prong, arguing that he has failed to plead a causal connection between his civil action and the District's responses to Act 168

---

[3] Count I of the Third Amended Complaint sets forth retaliation and due process claims under the First, Fifth, and Fourteenth Amendments. Although parties are generally expected to set forth separate claims under separate counts pursuant to Fed. R. Civ. P. 10(b), the failure to do so here did not prejudice Defendant, as it was able to clearly identify Plaintiff's separate constitutional claims and respond accordingly in its Motion to Dismiss.

[4] The elements of a First Amendment retaliation claim differ based on whether the claim is brought by a public employee or a private citizen. *Compare Munroe v. Central Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015) (public employee standard) *with Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (private citizen standard). But because the parties both set forth the elements for a private citizen's First Amendment retaliation claim – and McClendon appears to have filed his defamation action while not employed by the District – I apply the elements for a retaliation claim asserted for actions taken as a private citizen.

inquiries. To establish a causal link between protected activity and a retaliatory act, a plaintiff must typically demonstrate either (1) unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). In the absence of that proof, a plaintiff must show that the record as a whole supports an inference of causation. *Id.* The required link to establish this connection is "but-for" causation. *Mirabella*, 853 F.3d at 651 (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

Viewed as a whole, Plaintiff's factual allegations do not suggest that the District acted in a retaliatory manner when it reported information about its investigation of McClendon to other employers in response to Act 168 inquiries. McClendon offers minimal facts to show unusual temporal proximity between his protected activity – the filing of a lawsuit against the District – and the allegedly retaliatory actions taken by the District. Indeed, although he states that the District repeatedly reported false information about McClendon in the years since the District and McClendon signed the Agreement, the only specific instance he can point to occurred in February 2022 – six years after the agreement was signed. *See* Third Am. Compl. ¶ 51. Beyond that conduct, McClendon's complaint offers no facts to support his speculation that "there is a clear causal connection between the *Fitzpatrick* matter and the false reports," and this is not enough to suggest retaliatory intent. *See* ECF 12 at 9.

Because McClendon fails to set forth sufficient allegations for me to infer a causal relationship between his exercise of his First Amendment rights and the District's later actions, I

8

must dismiss his First Amendment retaliation claim. But because I am dismissing the claim for insufficient factual basis, this dismissal is without prejudice.[5]

### B. Due process (reputational harm)

McClendon's other constitutional claim alleges that the District violated his substantive due process rights under the Fourteenth Amendment by impinging upon McClendon's liberty interest in his reputation.[6]

Individuals have a protectable interest in their reputations, particularly when it is a governmental entity that puts a person's reputation in jeopardy. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). But reputation alone is not a liberty interest protected by the due process clause. *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989). Reputational harm is only actionable under 42 U.S.C. § 1983 "if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Id.* Thus, to establish a due process claim for deprivation of a liberty interest in reputation, a plaintiff must set forth what has been referred to as a "stigma-plus" claim, demonstrating "stigma to his reputation *plus* deprivation of some additional right or interest.'" *Dee v. Borough of Dunmore*, 549 F.3d 225, 233-34 (3d Cir. 2008) (quoting *Hill v. Borough of Kutztown,* 455 F.3d 225, 236 (3d Cir. 2006)).

---

[5] Even if McClendon could ultimately establish the elements of his retaliation claim, I note that his complaint affirmatively pleads that the District "believes it is bound to report knowingly false information" under the terms of Act 168. *See* Third Am. Compl. ¶ 68. This seems to concede that the District would have taken the actions at issue in the absence of any retaliatory animus – and a retaliation claim fails if the defendant can show "that the action would have been taken anyway, independently of any retaliatory animus." *Mirabella*, 853 F.3d at 651 (citing *Hartman*, 547 U.S. at 260-61).

[6] McClendon pleads that the District violated his due process rights under the Fifth Amendment and Fourteenth Amendment. Aside from redundancy, the Fifth Amendment applies only to actions taken by the federal government. *B & G Const. Co. v. Dir., Off. of Workers' Comp. Programs*, 662 F.3d 233, 246 n.14 (3d Cir. 2011). I will therefore analyze the due process claim solely under the Fourteenth Amendment.

Because McClendon plausibly demonstrates that the District maligned his reputation and prevented him from pursuing his profession, I will deny the District's Motion as to this claim.

### 1. "Stigma" prong

To sufficiently demonstrate stigma to his reputation, McClendon must demonstrate that the stigmatizing statements were false and that the statements were made publicly. *Dee*, 549 F.3d at 235 (citing *Hill*, 455 F.3d at 236).

McClendon must therefore first allege that the Act 168 form responses were false or misleading. Where parties dispute the falsity of the statements, a plaintiff must at least demonstrate "some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation." *Codd v. Velger*, 429 U.S. 624, 627 (1977). Here, the first question on the form asked the District whether McClendon had ever "[b]een the subject of an abuse or sexual misconduct investigation by any employer, state licensing agency, law enforcement agency, or child protective services agency" – but this question explicitly excluded any investigation which "resulted in a finding that the allegations were false." *See* Ex. E at 9. Yet the District nonetheless responded affirmatively to this question, thus implying that McClendon was guilty or likely guilty of abusing a student. *See id*. But based on the facts in the complaint and attached exhibits, McClendon creates a significant fact dispute over whether this statement was false. His criminal charges were dismissed. And as to the District's conclusion, the fact that it was willing to offer McClendon employment after it completed its investigation, together with the District's willingness to provide McClendon with a neutral reference should he seek employment elsewhere, are consistent with his argument that the District investigated the alleged abuse and found the allegations to be false. Third. Am. Compl. ¶ 7; *see also* Ex. A ¶¶ 1-2. Given

these allegations, I find that McClendon has sufficiently alleged that the District made a false or misleading statement for purposes of this claim.

The Complaint also sets forth sufficient facts to plausibly demonstrate that the damaging statement was made publicly. When personnel file information is disseminated and causes harm, Third Circuit precedent suggests that a plaintiff likely has a viable due process claim. *Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 603 (M.D. Pa. 2013) (citing *Cooley v. Pa. Hous. Fin. Agency*, 830 F.2d 469, 470 (3d Cir. 1987) and *Copeland v. Phila. Police Dep't*, 840 F.2d 1139 (3d Cir. 1988)), *aff'd*, 548 F. App'x 813 (3d Cir. 2013); *see also Brandt v. Bd. of Co-op. Educ. Servs., Third Supervisory Dist., Suffolk Cnty., N.Y.*, 820 F.2d 41, 45-46 (2d Cir. 1987) (holding that stigmatizing information in personnel file is sufficient to satisfy public disclosure requirement if a plaintiff demonstrates that potential employers will see that file and that information will damage job opportunities). In *Cooley*, for example, the Third Circuit affirmed a district court's grant of summary judgment to the defendant on the plaintiff's liberty interest claim because the plaintiff did not present "any evidence of actual dissemination" of certain information in his file to future employers. *Cooley*, 830 F.2d at 474, *abrogated on other grounds by Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207 (3d Cir. 1991). Similarly, in *Copeland*, the Third Circuit affirmed a district court's grant of summary judgment to the defendant where the plaintiff alleged that the information had been placed in his personnel file but set forth no further facts to support "an inference that the city intends to communicate this information to prospective employers." 840 F.2d at 1148. Unlike *Cooley* and *Copeland*, however, McClendon presents clear allegations that the District kept damaging information in his personnel file and disclosed it to potential employers. His complaint alleges that "Defendant has repeatedly . . . reported the unfounded allegations," and he specifically points to the District's disclosure of this information to Mastery in January 2022. Third Am.

11

Compl. ¶¶ 13-20; Ex. E at 9. While inferences alone are generally insufficient to plead that disclosures were made publicly, *see Copeland*, 840 F.2d at 1148, there is at least the one disclosure pled here, and the fact that McClendon did not progress past interviews in the education sector since he separated from the District in 2017 strongly buttresses his allegations. *See* Third. Am. Compl. ¶¶ 48-54.

### 2. The "plus" prong

McClendon must also demonstrate that he suffered some additional harm beyond the mere publication of these stigmatizing statements. While the "plus" prong is most frequently satisfied by a public employee's termination, *Hill*, 455 F.3d at 236, it can also be satisfied by deprivation of an individual's "liberty to pursue a calling or occupation," which the Third Circuit has firmly held is protected by the Fourteenth Amendment. *See Thomas v. Independence Township*, 463 F.3d 285, 297 (3d Cir. 2006) (citing *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994)). Here, McClendon sets forth extensive facts about the impact of the District's purported disclosures upon his ability to pursue his calling of working in education and other professions involving youth. *See* Third Am. Compl. ¶¶ 16-20, 48-59, 70. He alleges that he has been unable to secure full-time employment as a direct result of the District's conduct, and points to his abrupt removal from his classroom at Mastery and immediate termination after disclosure of the Act 168 information by the District as evidence of this impact. This is sufficient for me to conclude that the District's actions may have implicated "some additional right or interest" held by McClendon. *Cf. Razzano v. Sarandrea*, 431 F. Supp. 3d 650, 662 (W.D. Pa. 2019) (finding that plaintiff had not established the "plus" prong because he could not show that allegedly false Act 168 forms had "hampered [his] ability to pursue his profession"). Because McClendon has pled both requirements of a stigma-plus claim, his due process claim survives.

### C. Breach of contract

#### 1. *McClendon sufficiently pleads a breach of contract claim.*

Count II alleges that the District's affirmative responses on the Act 168 form constitute a breach of the parties' settlement agreement. To plead breach of contract under Pennsylvania law, a plaintiff must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

McClendon sufficiently pleads the existence of a signed agreement between the parties, and in its Motion, the District acknowledges that it entered into a settlement agreement with McClendon. Def.'s Mem. at 8, ECF 9; *see also* Ex. A. As to breach, McClendon asserts that the District's answers on the Act 168 form violated the terms of the non-disparagement clause in the parties' settlement agreement. *See* Ex. A ¶ 9. Specifically, McClendon alleges that the District's answers violated the parties' agreement to "not disparage one another, orally [or] in writing," and further argues that the District's failure to remove this information from McClendon's file goes against the parties' acknowledgement in the agreement that "the charges brought against [McClendon] have been expunged." *Id.*; *see also* Third Am. Compl. ¶¶ 78-79.

The District disputes whether the agreement in any way precludes it from disclosing the abuse investigation into McClendon. Preliminarily, it argues that nothing in the non-disparagement clause explicitly precludes it from disclosing that McClendon was investigated for abuse. ECF 9 at 10. It further claims that the "charges" referenced in this provision only refer to the criminal charges brought against McClendon by the Commonwealth, rather than any abuse charges involved in the District's internal investigations. *Id.* And more broadly, the District

13

represents that it would not have entered into any agreement that would preclude it from making the disputed disclosures, because it is obligated to report any abuse allegations against a current or former employee under Act 168. *Id.*; *see also* 24 P.S. § 1-111.1.

McClendon makes a plausible argument that the language of the non-disparagement clause encompasses disclosures about his investigation. As he points out in his opposition brief, the broad language of the clause could bar any type of disparaging comments, and there is no explicit carve out in the clause for Act 168 disclosures. *See* Pl.'s Opp. at 5, ECF 12. Reading the clause in the context of the entire agreement further buttresses McClendon's argument, as the agreement also contains a provision whereby the District agreed to provide McClendon with "a neutral reference and dates of employment if requested by prospective employers" – which suggests the parties' intent to prevent any further disclosures of the abuse investigation involving McClendon. *See* Ex. A ¶ 2; *see also Commonwealth ex rel. Kane v. UPMC*, 129 A.3d 441, 463-64 (Pa. 2015) (citation omitted) (emphasizing that a contract should be read as a whole "to give effect to its true purpose").

I note that the parties' disagreement about the scope and effect of these provisions in the contract is in part a function of their failure to address Act 168 when the settlement agreement was drafted, particularly their failure to address how the District would respond to the specific inquiries required by the Act. But given the substantial ambiguity, I cannot dismiss McClendon's breach of contract claim without discovery.

      2. *The District is not entitled to immunity on McClendon's contract claim.*

The District contends that even if McClendon has pleaded a claim, it cannot be held liable for any state law claims arising from its disclosures under the terms of Act 168. Under Act 168, any "employer, school entity, school administrator or independent contractor that provides information or records" related to a current or former employee or job application "shall be

14

immune from . . . civil liability for the disclosure of the information, *unless the information or records provided were knowingly false*." 24 P.S. § 1-111.1(d)(5) (emphasis added).

The disclosures that give rise to McClendon's claims here are certainly the type of information or records contemplated by this section of the statute. But the facts pled in the complaint suggest that these disclosures may have been "knowingly false." As previously discussed, the District's alleged actions – most notably, its willingness to reinstate McClendon – suggest that it necessarily determined that the abuse allegations levied against McClendon were unfounded. And yet, despite an explicit directive in the Act 168 form not to report any investigations that resulted in a finding that a specific allegation of abuse was unfounded, the District affirmatively stated that McClendon had been the subject of an abuse investigation. *See* Ex. E. at 9. After discovery, the District may be able to put forth evidence to show that this answer was not knowingly false. But taking the allegations in the complaint as true, I cannot find that the District is entitled to Act 168 immunity on McClendon's breach of contract claim solely on the pleadings.

### D. Equitable estoppel and judicial estoppel

McClendon also sets forth stand-alone claims that the District should be "equitably estopped" and "judicially estopped" from publishing the information in the Act 168 Form. Third Am. Compl. ¶¶ 82, 88. But these doctrines do not give rise to separate causes of action. *See Greenwald Caterers Inc. v. Lancaster Host, LLC*, 599 F. Supp. 3d 235, 265 (E.D. Pa. 2022) (Smith, J.) (finding that "neither the Supreme Court of Pennsylvania nor the Third Circuit Court of Appeals has recognized equitable estoppel as an independent cause of action"); *Fabian v. Shenkan*, No. 19-cv-0582, 2019 WL 4189848, at *3 (W.D. Pa. Sept. 4, 2019) (emphasizing that "the doctrine of judicial estoppel alone cannot serve as the basis for a claim"). I will therefore dismiss these counts,

without prejudice to McClendon arguing such principles later if relevant to his surviving claims. *See, e.g.*, *Fabian*, 2019 WL 4189848, at *3 (noting that plaintiffs were still "free to argue as a matter of evidence that Defendants are judicially estopped from taking a position contrary to a position which they pled in a state court action").

### E. Declaratory relief

McClendon's final count seeks a declaratory judgment clarifying the scope of Defendant's obligations under the Agreement moving forward. The District's argument is derivative, based on an assumption that Plaintiff has failed to sufficiently plead his other claims. Because the contract claim survives, some form of declaratory relief remains a possibility.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion will be granted in part and denied in part. An appropriate order follows.

  /s/ Gerald Austin McHugh
United States District Judge